KC **FILED**

JAN 0 9 2006

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| Installation Services, Inc., | ) | |
|             Plaintiff | ) | No. 06 **06C 0009** |
|      v. | ) | Judge |
| | ) | Magistrate Judge **JUDGE KENNELLY** |
| Shorenstein Realty Services, L.P., and | ) | |
| Crown Castle Broadcast USA Corp. | ) | |
| | ) | |
|             Defendants | ) | **MAGISTRATE JUDGE COLE** |

## COMPLAINT

Plaintiff Installation Services, Inc., by its attorney C. Joseph Yast, complains of

the defendants Shorenstein Realty Services, L.P. and Crown Castle Broadcast USA

Corp. as follows:

### COUNT I

1. Plaintiff, Installation Services, Inc. ("ISI") is a corporation organized and

existing under the laws of the State of Illinois, has its principal place of business in the

State of Illinois, within this district, and specializes in tower and antenna installation

work. ISI has worked on some of the most complex communication systems in the world

and has also worked on nearly every major building in the United States, including over

20 years of work atop the Hancock Building in Chicago for various customers.

2. Defendant Shorenstein Realty Services, L.P. ("Shorenstein") is a California

limited partnership. None of the persons or entities of which Shorenstein is comprised is

a citizen of the State of Illinois or is comprised of any citizen of the State of Illinois. As

alleged in further detail below, Shorenstein transacted business within the State of

Illinois, made a contract or promise substantially connected with the State of Illinois, committed tortious acts within the State of Illinois, and owned real estate in the State of Illinois. It is therefore subject to the Court's personal jurisdiction pursuant to 735 ILCS 5/2-209(a)(1), (2), (3) and (7).

3. Defendant Crown Castle Broadcast USA Corp. ("Crown Castle") is a corporation organized and existing under the laws of the State of Delaware, and has its principal place of business in Texas. Crown Castle is registered to do business and is doing business in the State of Illinois. The Court therefore has personal jurisdiction over Crown Castle pursuant to 735 ILCS 5/2-209(b)(4). As alleged in further detail below, Crown Castle transacted business within the State of Illinois, and made a contract or promise substantially connected with the State of Illinois. It is therefore subject to the Court's personal jurisdiction pursuant to 735 ILCS 5/2-209(a)(1) and (7).

4. The Court has subject matter jurisdiction of this action under 28 U.S.C. §§1332(a)(1): plaintiff's citizenship is different from that of each defendant, and the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs.

5. Venue in this district is proper under 28 U.S.C. §1391(a)(2) because a substantial part of the acts and omissions giving rise to plaintiff's claims occurred in this district.

6. In January, 2001, ISI entered negotiations with Crown Castle for a $1,300,000.00 contract for ISI to perform substantial antenna and tower removal and installation work, primarily for CBS's Chicago affiliate, Channel 2, projected to run over the course of five to six months, atop the Hancock Building in Chicago.

7. At all material times, Shorenstein owned the Hancock Building and Crown Castle managed all roof-top affairs for Shorenstein.

8. In early 2001, at the outset of ISI's involvement with the Hancock Building project, Crown Castle and Shorenstein assured ISI that ISI would have unrestricted access to the entire South and East sides of the Hancock Building roof-top in order to conduct its work.

9. With unrestricted use of the entire South and East sides of the Hancock Building roof, ISI could have conducted its work using a winch it already owned (either diesel or electric), stationing that winch on the roof-top.

10. When ISI began its work on the Hancock Building roof-top, however, it was not given unrestricted use of the entire South and East sides of the Hancock Building roof. Instead, Shorenstein had given over all of the South side and substantial sections of the East side of the roof to a building-cleaning company which had installed scaffolding, hoists, and related equipment in the area which Crown Castle and Shorenstein had promised exclusively to ISI. The presence of that scaffolding equipment prevented ISI from stationing any of its winches on the roof-top.

-3-

11. ISI complained about the scaffolding obstruction to Ray Tattershall of Crown Castle and John Kapp of Shorenstein, who told ISI that the scaffolding equipment would not be removed. John Kapp also told ISI that ISI would not have been permitted to use a diesel-powered winch on the Hancock Building roof in any event, for safety reasons.

12. ISI then informed Crown Castle and Shorenstein that if the scaffolding equipment stayed, ISI would have to station a winch on the roof of the "helix" parking garage some 1,100 feet below the roof-top, that positioning the winch there would require at least double the length of lifting-cable to be spooled on the winch, that ISI did not own a winch of sufficient drum-capacity to spool those substantial extra lengths of cable, and that ISI would therefore have to buy a new high-capacity winch for this special purpose.

13. In response, Ray Tattershall of Crown Castle, Shorenstein's roof-top manager, agent and representative, told ISI to go ahead and buy a new winch. When ISI asked who would reimburse ISI for that significant expenditure, Mr. Tattershall stated that it would be taken care of.

14. In reliance on the word and assurances of Ray Tattershall of Crown Castle, Shorenstein's roof-top representative and agent, that ISI would be reimbursed for the extraordinary expense of purchasing a high-capacity winch, ISI bought a new ConMaco winch and new cable for the Hancock Building project for which ISI paid a total of approximately $277,000.00.

15. To date, neither Crown Castle nor Shorenstein has reimbursed ISI for its purchase of the ConMaco winch, which ISI was unable to use after it was dismissed from the Hancock Building project, as alleged in further detail below.

16. Despite the refusals of Shorenstein's John Kapp to provide ISI with complete access to the entire South and East sides of the Hancock Building roof or to permit ISI to use a diesel-powered winch on the Hancock Building roof, after ISI had been dismissed from the project, Shorenstein allowed the replacement contractor and subcontractor to use a gasoline-powered winch on the roof and to have free access to the entire South and East sides of the roof-top.

WHEREFORE, plaintiff Installation Services, Inc. prays that the Court:

A.    Enter Judgment in plaintiff's favor and against defendant Shorenstein Realty Services, L.P., awarding compensatory damages to plaintiff of $277,000.00 or such further amount as may be proved at trial as plaintiff's costs and expenses of purchasing the new high-capacity winch for the Hancock Building project, as a result of plaintiff's reasonable detrimental reliance on the promises Shorenstein made to plaintiff, both directly and indirectly;

B.    Enter Judgment in plaintiff's favor and against defendant Crown Castle Broadcast USA Corp., awarding compensatory damages to plaintiff of $277,000.00 or such further amount as may be proved at trial as plaintiff's costs and expenses of purchasing the new high-capacity winch for the Hancock Building project, as a result of plaintiff's reasonable detrimental reliance on the promises Crown Castle made to plaintiff;

C.    Awarding plaintiff all its costs, expenses and attorney's fees incurred in this action; and

D.    Granting plaintiff any and all such further relief as the Court sees fit.

## COUNT II

17. Plaintiff realleges ¶¶1-7.

18. On July 31, 2001, ISI entered into a $1,300,000.00 written contract with Crown Castle, either on its own behalf or acting as roof-top manager, agent and representative of Shorenstein, for a specified scope of work on the Hancock Building antenna project. A true and correct copy of that contract is attached as Exhibit A.

19. Neither Crown Castle nor Shorenstein has to date paid the $1,300,000.00 contract price in full.

20. Of the $1,300,000.00 contract price, $426,989 remains still outstanding, due and payable to ISI.

21. ISI performed or stood ready, willing and able to perform each and all of its obligations under the July 31, 2001 contract.

WHEREFORE, plaintiff Installation Services, Inc. prays that the Court:

A. Enter Judgment in plaintiff's favor and against defendant Shorenstein Realty Services, L.P., awarding compensatory damages to plaintiff of $426,989.00 or such further amount as may be proved at trial for Shorenstein's breach of contract;

B. Enter Judgment in plaintiff's favor and against defendant Crown Castle Broadcast USA Corp., awarding compensatory damages to plaintiff of $426,989.00 or such further amount as may be proved at trial for Crown Castle's breach of contract;

C. Awarding plaintiff all its costs, expenses and attorney's fees incurred in this action; and

D. Granting plaintiff any and all such further relief as the Court sees fit.

## COUNT III

22. Plaintiff realleges ¶¶1-21.

23. Because the work on the Hancock Building project dealt primarily with the Channel 2 antenna, CBS bore a substantial part of the project's expense, and CBS had authority to choose and to remove the contractors working on the project.

24. Prior to December 17, 2001, Shorenstein, through John Kapp, had falsely informed CBS on a number of occasions, that ISI was not qualified or competent to do the work on the Hancock project for CBS, and that ISI was overcharging and gouging on the project.

25. On December 17, 2001, as a direct and proximate result of derogatory and defamatory comments made about ISI by Shorenstein and others, CBS dismissed ISI from the Hancock project, thereby cutting ISI off from over $400,000.00 of additional work it expected to but had not yet completed on the project, plus some $500,000.00 in extra work and substantial tower painting projects at the Hancock Building. In addition, ISI was and is entirely unable to use the special winch it had purchased for some $277,000.00 as a result of promises made by Shorenstein and Crown Castle, solely and exclusively for the Hancock Building project. ISI also lost the opportunity to perform future work on the Hancock Building roof, conservatively estimated at $50,000.00 to $60,000.00 per year. Finally, because of the intentional and malicious nature of the defamation and disparagement by Shorenstein, ISI is entitled to punitive damages from Shorenstein in such amount as the jury may see fit to award.

WHEREFORE, plaintiff Installation Services, Inc. prays that the Court:

A.  Enter Judgment in plaintiff's favor and against defendant Shorenstein Realty Services, L.P, awarding compensatory and punitive damages to plaintiff in such amount as may be proved at trial for the intentional defamation and disparagement of plaintiff by Shorenstein Realty Services, L.P. as well as for the intentional interference by Shorenstein Realty Services, L.P. with plaintiff's prospective economic advantage with CBS;

B.  Awarding plaintiff all its costs, expenses and attorney's fees incurred in this action; and

C.  Granting plaintiff any and all such further relief as the Court sees fit.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues.

C. Joseph Yast,
Attorney for the Plaintiff

Law Office of C. Joseph Yast
Willow Hill Executive Center
540 Frontage Road
Suite 2110
Northfield, IL  60093-1224
Phone:  847/441-0357
Fax:  847/441-0359
Email:  JoeYastLaw@comcast.net

# EXHIBIT A



| Crown Castle Broadcast USA Corp. | Tel 312 944-5800 |
|---|---|
| John Hancock Center | Fax 312 266-1651 |
| 875 North Michigan Avenue, Suite 1335 | www.crowncastle.com |
| Chicago. IL 60611 | |

July 30, 2001

Mr. Ron Romano
Installation Services, Inc.
10406 Cherry Valley Road
Genoa, IL 60135

**Re:    John Hancock Center Antenna Improvement Project**

Dear Ron:

This letter is intended to confirm our understanding of certain principal terms regarding the performance by Installation Services, Inc. of work in connection with the East Tower improvement project at the John Hancock Center in Chicago, Illinois.

We have discussed and generally agreed upon a scope of work to be performed in connection with the antenna improvement project. A portion of the project involving the removal of the existing CBS antenna and the removal the existing pole structure is described in the AIA, A107 Limited Scope Project Agreement among ISI, CBS Broadcasting, Inc. and SRI Michigan Avenue Venture LLC which is being signed today. As we discussed, the parties anticipate entering into one or more additional agreements with ISI with respect to additional portions of the overall antenna improvement project.

By signing this letter, ISI agrees that it will perform the scope of work discussed to date for an amount not to exceed $1.3 million (including the amount payable to ISI under the Limited Scope Project Agreement referred to above). Such acknowledgment, of course, will be subject to the execution and delivery of one or more additional contracts in substantially the form as that which is being signed today for the antenna and pole removal work, and to the understanding that the scope of work will not change substantially from that which has been discussed.

Please acknowledge the agreement of ISI to the terms described above by signing where appropriate below and returning the signed letter to me.

Very truly yours,

Mead Elliott

Accepted and Agreed:

INSTALLATION SERVICES, INC.

By: _____
Ron Romano

Date: 7-31-01

**EXHIBIT**
_____-A-_____